IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
donsmith749@gmail.com,
smith.jamisoncorporation@gmail.com,
wolfpackdod2019@gmail.com, and
lfmsupply2020@gmail.com THAT IS
STORED AT PREMISES CONTROLLED
BY GOOGLE, LLC

Magistrate No. 23-1129

**[Under Seal]**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Christin Curington, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for

information associated with the email accounts of donsmith749@gmail.com,

smith.jamisoncorporation@gmail.com, wolfpackdod2019@gmail.com, and

lfmsupply2020@gmail.com, which is stored at premises controlled by Google, LLC, an email

provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.   The

information to be searched is described in the following paragraphs and in Attachment A.  This

affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a),

2703(b)(1)(A) and 2703(c)(1)(A) to require Google, LLC to disclose to the government copies of

the information (including the content of communications) further described in Section I of

Attachment B.  Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

2.      I am a Special Agent with the Defense Criminal Investigative Service (DCIS), which is part of the Office of the Inspector General for the U.S. Department of Defense (DoD).  I have been so employed for approximately one year.  I was previously a Special Agent with the Naval Criminal Investigative Service for approximately five years.  In my current capacity, I am charged with investigating acts of suspected DoD contract fraud and procurement fraud, as well as other suspected federal criminal violations affecting the DoD.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1001 (making false statements); Section 1343 (wire fraud); and Section 287 (making a false or fraudulent claim against the U.S), have been committed by **Donald E. Smith, Smith and Jamison Corporation, Milton Kaminski, DoD Supply Inc., Jay W. McLaughlin, Wolfpack Supply LLC, Lindsey F. McLaughlin, LFM Supply LLC,** and other unknown persons and companies.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## PROBABLE CAUSE

*Contracting Process*

6.      The DoD enters into Purchase Orders through its various agencies, including the Defense Logistics Agency (DLA).  DLA is the United States' combat logistics support agency, and as such, manages the global supply chain for all military services, 10 combatant commands, other federal agencies, and partner and allied nations.

7.      When the DoD determines that a particular part is needed, it issues "Solicitations," or Requests for Quotation (RFQs) electronically through a web-based application, called DIBBS (DLA's Internet Bid Board System).  The RFQs list the DoD requirements for the requested part, which can include drawings and/or specifications explaining how the part is to be made, where the part is to be obtained from, or other detailed requirements for the part.  Users (potential contractors) are able to search for, view, and submit bids in response to the RFQs.  Each quote, or bid, submitted will list the contractor name, business location and an email address.

8.      To conduct business with the DOD, and to bid in DIBBS, contractors must register in the System for Award Management (SAM). That registration requires contractors to, among other things, provide an email address and agree to receive payments electronically.  Contractors must also obtain a Commercial and Government Entity (CAGE) code.  The CAGE code is a 5-character identification number assigned by the DLA, which provides a standardized method of identifying a given contractor facility at a specific location.

*Overview of Investigation*

9.      This investigation involves numerous individuals and companies, some of whom/which are described in this affidavit, that have systematically provided nonconforming replacement parts for U.S. military weapon systems to DLA.  DLA officials, DCIS and NCIS Special Agents, and Internal Revenue Service, Criminal Investigation (IRS-CI) Special Agents working the investigation have linked these companies to an individual named Donald E. Smith ("SMITH"), who resides in Corapolis, Pennsylvania.  On June 30, 2015, DLA debarred SMITH and several companies that he operated, one of which was Smith and Jamison Corporation (described below), for a period of three years for providing numerous nonconforming parts to DLA.  When a contractor is debarred, they can no longer do business with the government until they are reinstated.

*DoD Supply, Incorporated*

10.      According to the State of Florida, Division of Corporations ("sunbiz.org"), DoD Supply was formed on November 9, 2017 by Milton Kaminski, with a principal address located in West Palm Beach, Florida.  On January 26, 2018, DoD Supply registered as a manufacturer of goods in the SAM, with Milton Kaminski listed as the Accounts Receivable Point of Contact (POC), Electronic Business POC, and Government Business POC.  The company's SAM submission listed an email address of dodsupplyinc@gmail.com, which has remained the company's listed email address to the present.

11.      According to DoD Supply's contract history with the DoD, the company began bidding on and receiving DLA Purchase Orders in approximately July 2019.  As part of its ongoing quality assurance efforts, DLA Land & Maritime (L&M) recently conducted tests on parts provided by DoD Supply under nine selected DLA Purchase Orders, valued at a total of

4

approximately $329,748, issued between approximately August 2019 and July 2020. These nine Purchase Orders were "drawing" contracts, meaning the contractor was required to manufacture a specific part in accordance with specifications identified by DLA in its solicitation and Purchase Order. When signing a DLA Purchase Order, DoD contractors agree that they will ensure the parts supplied to the DoD are in accordance with DoD drawings and specifications.

12.     In its bids for the above nine Purchase Orders, DoD Supply certified to DLA that it would provide the parts made in accordance with the drawing specifications. Each quote contained the following "Quoter" information:

> Name:  Milton Kaminski
> Phone: (561) 494-6763
> Email: dodsupplyinc@gmail.com

13.     All of the tested parts failed the testing performed by the DLA L&M. In other words, DoD Supply provided nonconforming parts that did not meet the requirements of the drawings and specifications.

14.     For example, on June 15, 2020, DoD Supply was awarded DLA Purchase Order SPE8E7-20-V-1415, and subsequently provided 21 Tubeaxial Fans to DLA. These parts are critical application items, which are items on a U.S. military weapon system that are essential to the weapon's performance, operation, and/or the preservation of life or safety of the operating personnel. Per the Purchase Order, these Tubeaxial Fans were required to match a height requirement of 2.03 inches and be manufactured in accordance with a referenced drawing, which included connectors and bottom coverings. However, a DLA test of the Tubeaxial Fans revealed the fans provided did not meet the height requirement, were missing the required connectors, and were missing the required bottom coverings.

15.     Based upon the testing results, the DCIS Dayton Resident Agency opened a criminal investigation into DoD Supply in approximately May 2022.

16.     On April 1, 2022, DLA debarred DoD Supply and Milton Kaminski.  In total, prior to DoD Supply's debarment, the government paid approximately $1.2 million to the bank account DoD Supply listed in the SAM.

17.     An IRS-CI Special Agent working this investigation obtained and reviewed the records for the bank account into which the approximately $1.2 million in payment from the government were transferred.  This bank account, located at Citizens Bank, was not owned by DoD Supply or Milton Kaminski, but rather by Smith and Jamison, with SMITH listed as the sole signatory for the account.  In addition to the funds received directly from the government, the Smith and Jamison account also received additional funds, including: 1) from May 2019 through April 2021, $507,000 from Gold Peak Industries, another business that has repeatedly provided non-conforming parts to the DLA, and 2) from January 2020 through May 2020, $205,000 from Wolfpack Supply LLC (described below). Many of the checks from Gold Peak and Wolfpack Supply indicated in the memo line that they were for "Consulting Services" or for similar purposes. The mailing address listed on Smith and Jamison's bank account is 1936 Park Manor Boulevard, Apt 15834, Pittsburgh, PA 15244.  Open source research revealed that this address is a post office box.

18.     On December 1, 2022, I served a federal search warrant on Google, LLC for the content and other information in the email account of dodsupplyinc@gmail.com for the time period of November 2017 through November 2022.  Review of the emails in this account revealed the following:

    a.  Milton Kaminski appears to be the primary individual using the account.

b.  The user of the account exchanged numerous emails with DLA contracting officers, quality assurance specialists, and others regarding business with DLA.

c.  DLA routinely sends traceability document requests to DLA contactors, which are requests for records showing how the contractor intends to or did obtain the products that they are providing to DLA.  These requests are made both 1) before a Purchase Order is awarded, to help to ensure that the contractor intends to provide the correct parts, and 2) after a Purchase Order is awarded, to verify that the contractor in fact provided the correct parts.  Contractors are required to respond to such traceability document requests.  In response to requests for traceability documents – both pre-contract award requests and post-contract award requests – Kaminski emailed DLA contracting officers only quotes showing the price vendors *would charge* for designated products. While this is acceptable for pre-award traceability documentation, it is not acceptable for post-award traceability – DLA requires invoices or some other documentation showing the correct parts were actually provided.  Not once did Kaminski email DLA contracting officers proper post-award traceability documentation, even when requested by contracting officers on numerous occasions to do so.

d.  It appears that SMITH, not Kaminski, was ordering the parts that DoD Supply provided to DLA. There were no emails in the DoD Supply account showing that DoD Supply ordered those parts. However, the records showed that Kaminski sent approximately 65 emails to SMITH at donsmith749@gmail.com from August 26, 2020 through May 3, 2022, attached to which were identification labels for the parts DoD Supply and/or SMITH were providing to DLA.  Each label contained a

7

Purchase Order number, CAGE code, NSN, part number, and part description, which matched the information for each DLA PO.  These identification labels also had barcodes, which DLA employees use to scan the parts into DLA stock.  The identification labels are required to be affixed to the packaging of parts received by DLA.  Of note, for each DLA Purchase Order, these labels reflected the correct CAGE code and part number that DoD Supply was required to provide to DLA per the requirements of the Purchase Order, Solicitation and Bid. In other words, it appears that Kaminski was providing the labels to SMITH, who was then actually packaging and shipping the products to DLA.

19.    On June 21, 2022, I served a preservation letter on Google, LLC, which acknowledged receipt, to preserve the email account of donsmith749@gmail.com.  In general, an email that is sent to a Google, LLC subscriber is stored in the subscriber's "mail box" on Google, LLC servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on Google, LLC servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google, LLC's servers for a certain period of time.

20.    On May 15, 2023, a DCIS agent served an 18 USC 2703(d) order on Google, LLC for information on the email account of donsmith749@gmail.com.  Review of the materials provided by Google revealed that the subscriber name is Don Smith, and this email account was created on December 19, 2016.  Four credit cards were listed under billing information for the accounts, all of which were in the name of Don Smith.

21.    Based upon the above information, it appears that SMITH is directly involved in operating DoD Supply because 1) all government payments to DoD Supply were transferred

directly into SMITH's bank account, and 2) SMITH appears to have packaged and shipped the parts that DoD Supply provided to DLA.

*Smith & Jamison Corporation*

22.     SMITH was previously debarred from doing business with the government, with an exclusion that expired on November 22, 2013.

23.     According to the Pennsylvania Department of State, Smith & Jamison Corporation was formed on November 4, 2013 by SMITH, and initially located in Burgettstown, PA.  Smith & Jamison was initially registered in the SAM on January 9, 2014 and SMITH was listed as the primary contact for the company, with an email address of smith.jamisoncorporation@gmail.com.

24.     On June 30, 2015, SMITH and Smith & Jamison were issued Notices of Proposed Debarment by DLA.  The proposed debarments were in response to nonconforming parts provided by Smith & Jamison under five purchase orders totaling $125,343, awarded from February through September 2014. The non-conformances included incorrect dimensional characteristics, incorrect materials, improper or missing materials plating, improper threading, and incorrect items. SMITH was debarred because he was the owner of Smith & Jamison, representing his second debarment.

25.     On June 8, 2022, SMITH submitted a reinstatement package to DLA L&M on behalf of Smith and Jamison.  In the reinstatement request, SMITH identified himself as President of Smith & Jamison, and provided a mailing address of a P.O. Box (1936 Park Manor Boulevard, Apt. 15834, Pittsburgh, PA 15244), and email address of smith.jamisoncorporation@gmail.com.  SMITH also provided a physical business address of 2922 Ventana Drive, Coraopolis, PA 15108, together with a lease for an apartment located at this

address with a one-year term from August 14, 2022 through August 13, 2023.  Tenants on the

lease are SMITH and Elizabeth Czajkowski.  I am aware from a prior DCIS investigation that

Czajkowski was involved with SMITH's earlier companies and has also been previously

debarred by DLA.  The reinstatement package included pictures inside the Coraopolis apartment

depicting a desk, laptop computer, a copier/scanner/printer, shredder, and numerous office

supplies.  As SMITH and Smith and Jamison had already served their prior debarment period,

and their reinstatement package met the minimum requirements, DLA L&M reinstated them and

provided access to DIBBS.

26.     Beginning in June 2022, Smith & Jamison has obtained approximately 93

Purchase Orders from DLA, valued at approximately $156,800.  The vast majority of these

Purchase Orders were awarded from January through June 2023.

27.     On June 13, 2023, a DLA L&M Fraud Attorney advised that DLA L&M began

pulling parts recently provided by Smith & Jamison Purchase Orders for testing.  To date, one of

these tests has been completed, involving critical application item hand wheels, which are used in

U.S. Navy Ohio-class nuclear-powered ballistic missile submarines. Smith & Jamison provided

these items under Purchase Order number SPE7M4-23-P-1234, awarded by DLA L&M on January

13, 2023 for $9,145.  The parts failed the test and cannot be used by the Navy.

28.     In its bid for the above Purchase Order, Smith & Jamison certified to DLA that it

would provide the parts made in accordance with the drawings and specifications.  The quote listed

a vendor address of 2922 Ventana Drive, Coraopolis, PA 15108.  The quote also contains the

following "Quoter" information:

> Name:  Donald Smith
> Phone: (412) 208-5550
> Email: smith.jamisoncorporation@gmail.com

29.     The contractor's email, as listed in the SAM, is the one used by DLA to communicate with the contractor.  As an example, on January 28, 2023, Don Smith, using the email account of smith.jamisoncorporation@gmail.com, emailed a DLA L&M Contracting Officer about one of Smith and Jamison's Purchase Orders with DLA L&M, and requested that the delivery due date be extended.  SMITH and the Contracting Officer exchanged emails on the matter for the next month.  As another example, when Purchase Orders were awarded to Smith & Jamison, an "Award Notice" was emailed to smith.jamisoncorporation@gmail.com.

30.     On May 9, 2023, an NCIS agent served a preservation letter on Google, LLC, which acknowledged receipt, to preserve the email account of "smith.jamisoncorporation@gmail.com".

*Wolfpack Supply, LLC*

31.     According to the Pennsylvania Department of State, Wolfpack Supply LLC was formed on February 20, 2019 by Jay McLaughlin, with a location in Washington, Pennsylvania. Wolfpack was registered in the federal government's SAM on July 2, 2019, and McLaughlin was listed as the primary contact for the company, with an email address of wolfpackdod2019@gmail.com.  From August 2019 through June 2021, Wolfpack was awarded at least 580 DLA Purchase Orders that the company fulfilled, and was paid approximately $1.12 million for completing these Purchase Orders.

32.     Each of the submitted bids listed the following information for the bidder:

> Name:  Jay W McLaughlin
> Phone: (724) 984-7580
> Email: wolfpackdod2019@gmail.com

33.     As part of its ongoing quality assurance efforts, DLA L&M conducted tests on parts provided by Wolfpack on 15 randomly selected DLA Purchase Orders, with a combined value of

11

more than $35,000.  Wolfpack provided nonconforming parts on 12 of those 15 purchase orders evaluated.  These 12 purchase orders were "drawing" Purchase Orders, such that Wolfpack was required to provide parts manufactured in accordance with specific drawings and specifications. In its bids for the above 12 purchase orders, Wolfpack Supply certified to DLA that it would provide the parts made in accordance with the drawing specifications.

34.    Instead, Wolfpack provided nonconforming parts, with failures including significant dimensional and material nonconformities.  In each instance these failures were judged to be "major" failures, meaning the nonconformities rendered the parts unacceptable for use.

35.    For example, on May 27, 2020, Wolfpack Supply was awarded DLA Purchase Order SPE7M3-20-P-4351, and subsequently provided 3 Steam Traps to DLA.  These parts are critical application items installed on U.S. Military weapon systems.  A DLA test of the Steam Traps revealed, per the test report, that "there were several chemical failures noted which included two main components of the Steam Trap, the main body and bonnet both of which failed to meet the required chemistry of a C92200 alloy."  As a result, per the test report, the Steam Traps failed to meet the requirements and were unacceptable for use by the military.

36.    In light of the identified non-conforming parts, on August 4, 2021, McLaughlin and Wolfpack were issued a Notice of Proposed Debarment.  No response to the Notice of Proposed Debarment was received from McLaughlin or Wolfpack.  Therefore, McLaughlin and Wolfpack were debarred for a period of three years, beginning on August 4, 2021 and continuing through August 4, 2024.

37.     As previously described, from January 2020 through May 2020, $205,000 was transferred from Smith and Jamison's bank account into Wolfpack Supply LLC's bank account for "Consulting Services."

38.     As the email listed in the SAM for Wolfpack Supply was wolfpackdod2019@gmail.com, that is the email address DLA used to communicate with the company.  As an example, on May 15, 2020, a DLA L&M Contracting Officer sent an email to Wolfpack, using the email account of  wolfpackdod2019@gmail.com, and requested that Wolfpack provide traceability documents for parts provided on one of Wolfpack's Purchase Orders with DLA L&M.  On May 18, 2020, Jay McLaughlin responded to the email, and attached a McMaster-Carr invoice.  On the same day, the Contracting Officer responded to McLaughlin and advised the traceability documentation was insufficient.  As another example, when Purchase Orders were awarded to Wolfpack, an "Award Notice" was emailed to wolfpackdod2019@gmail.com.

*LFM Supply, LLC*

39.     According to the Ohio Secretary of State, LFM Supply LLC was formed on July 21, 2020 by Lindsey McLaughlin, and is located in New Philadelphia, Ohio.  LFM Supply was registered in the SAM on March 3, 2021, and McLaughlin was listed as the primary contact for the company, with an email address of lfmsupply2020@gmail.com.  Lindsey McLaughlin is the daughter of Jay McLaughlin.  From July 2021 through October 2021, LFM was awarded at least 45 DLA Purchase Orders that the company fulfilled, and was paid approximately $9,200 for completing these Purchase Orders.

40.     Each of the submitted bids listed the following information for the bidder:

Name:  Lindsay McLaughlin

13

Phone: (724) 562-7676
Email: lfmsupply2020@gmail.com

41.     As part of its ongoing quality assurance efforts, DLA L&M conducted one test on parts provided by LFM Supply on a randomly selected "drawing" contract, SPE5E2-21-V-2793, relating to loop clamps.  This Purchase Order was a "drawing" contract, and Wolfpack was required to provide specific loop claps manufactured in accordance with the drawings and specifications included in the RFQ.  In its bid for the Purchase Order, Wolfpack Supply certified that it would provide the parts made in accordance with the drawing specifications. However, a DLA test of the provided products revealed they were oversized, did not have the required cushion, and therefore could not be used by the U.S. military.

42.     As part of this investigation, agents reviewed Wolfpack Supply's bank account at PNC Bank, into which payments were wire transferred for Wolfpack's fulfillment of DLA Purchase Orders.  This review revealed that from August 2020 through August 2021, $5,500 was transferred from Wolfpack's bank account to the bank account of LFM Supply for "Consulting Fees."

43.     The email account listed in the SAM, and for which the DLA communicated with Wolfpack, was lfmsupply2020@gmail.com. As an example, on August 25, 2021, a DLA L&M Contracting Officer sent an email to LFM Supply, using the email account of lfmsupply2020@gmail.com, and requested that LFM Supply provide their new price for an order.  On August 30, 2021, Lindsay McLaughlin responded to the email, and advised that she needed to increase her price by a factor of ten.  As another example, when Purchase Orders were awarded to Wolfpack, an "Award Notice" was emailed to lfmsupply2020@gmail.com.

14

*Conclusion*

44.     Based on the above information, Smith & Jamison Corporation, DoD Supply Inc., Wolfpack Supply LLC, and LFM Supply have all submitted nonconforming parts to DLA.  They also all appear linked to SMITH, evidenced in part by the transfer of money between the entities. SMITH appears to be either consulting with these companies and/or directly operating them, depending on the company.

45.     Based on my knowledge, training and experience, as well as the evidence gathered to date in this investigation, I know that it is common for owners and managers of small businesses engaging in U.S. Government contracting to communicate via email with suppliers and vendors to send requests for quotes, communicate specifications, receive quotes, issue purchase orders, and communicate other relevant information relating to U.S. Government Purchase Orders. As such, I would submit there is probable cause to search the email accounts of donsmith749@gmail.com, smith.jamisoncorporation@gmail.com, wolfpackdod2019@gmail.com, and lfmsupply2020@gmail.com for such information.

## BACKGROUND CONCERNING EMAIL

46.     In my training and experience, I have learned that Google, LLC provides a variety of online services, including email, to the public.  Google, LLC allows subscribers to obtain email accounts at the domain name gmail.com, like the email accounts listed in Attachment A. Therefore, the computers of Google, LLC are likely to contain stored electronic communications (including retrieved and unretrieved email for Google, LLC subscribers) and information concerning subscribers and their use of Google, LLC services, such as account access information, email transaction information, and account application information.   In my training and

experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

47.    A Google, LLC subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google, LLC. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

48.    In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

49.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the

account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

50.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

51.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by the email provider can show how and when the account was accessed or used.  For example,

17

email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## **CONCLUSION**

52.    I submit that this affidavit supports probable cause for a warrant to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.  Because the warrant will be served on Google, LLC, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/S/ Christin Curington

Christin E. Curington
Special Agent
Defense Criminal Investigative Service

18

Sworn and subscribed to me, by telephone
Pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
This 5th day of July, 2023

_____
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the email accounts of donsmith749@gmail.com,                                       smith.jamisoncorporation@gmail.com, wolfpackdod2019@gmail.com, and lfmsupply2020@gmail.com, that are stored at premises owned, maintained, controlled, or operated by Google, LLC, 1600 Amphitheatre Parkway, Mountain View, California 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.        Information to be disclosed by Google, LLC ('the Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.        The contents of all emails associated with the accounts for the below-listed dates, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

| Email Address | Dates |
|---|---|
| donsmith749@gmail.com | April 1, 2019 - Present |
| smith.jamisoncorporation@gmail.com | April 1, 2019 – Present |
| wolfpackdod2019@gmail.com | February 20, 2019 - October 31, 2021 |
| lfmsupply2020@gmail.com | February 20, 2019 – October 31, 2021 |

b.        All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account

status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

       c.     The types of service utilized;

       d.     All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

       e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, United States Code, Section 1001 (making false statements); Section 1343 (wire fraud); and Section 287 (making a false or fraudulent claim against the U.S), those violations involving **Donald E. Smith, Smith and Jamison Corporation, Milton Kaminski, DoD Supply, Inc., Jay W. McLaughlin, Wolfpack Supply LLC, Lindsey F. McLaughlin, LFM Supply LLC,** and other known and unknown persons and companies, and occurring after on or about November 9, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

- Information related to U.S. Department of Defense (DoD) contracting, to include:

  a.  All communications with vendors about the purchase of goods to be provided to the DoD/DLA, including invoices, receipts, and shipping information;

  b.  All records showing requirements for DoD contracts and/or Purchase Orders, including general requirements for contractors and requirements for specific

2

contracts and/or Purchase Orders (i.e., drawings or measurement requirements for products);

   c.   All submissions to DoD/DLA, including records of CAGE code registrations, SAM applications or registrations, traceability documentation, or other communications;

   d.   All communications with DoD/DLA, including all requests for traceability documents, and warnings regarding requirements for provided products;

   e.   All records regarding submitted bids or quotes;

   f.   All records regarding purchase orders and/or contracts entered into;

   g.   All payment records regarding payment from the government for products provided; and

   h.   All records regarding shipping information for the sending of products to the DoD/DLA.

- All communications between the email account and Don Smith, Smith and Jamison Corporation, Milton Kaminski, DoD Supply, Inc., Jay W. McLaughlin, Wolfpack Supply, LLC, Lindsey F. McLaughlin, or LFM Supply, LLC.

- Information related to the creation, ownership, registration, corporate meeting minutes, tax records and annual reports, employees or dissolution of **Smith and Jamison Corporation, DoD Supply, Inc., Wolfpack Supply LLC and LFM Supply LLC**;

- Records and information about the disposition of funds received from the government directly or indirectly, related to the sale of parts to the DoD/DLA, or of funds received relating to consulting services provided related to DLA contracts and/or Purchase Orders;

3

- Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

- Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

- The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Google, LLC, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google, LLC. The attached records consist of _____. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, LLC, and they were made by Google, LLC as a regular practice; and

b.      such records were generated by Google, LLC's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google, LLC in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Google, LLC, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                    Signature